## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SANDERS, et. al., | ) | CASE NO. 5:15-cv-2286 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| ARCTIC CAT, INC., et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

This matter is before the Court on the motion of plaintiffs Michael and Jennifer Sanders (collectively, "plaintiffs" or "Sanders") to remand this case to the Stark County Court of Common Pleas. (Doc. No. 12-1 ["Mot."].) Defendants have opposed the motion (Doc. No. 21 ["Opp'n"]), and plaintiffs have replied (Doc. No. 22 ["Reply"]). For the reasons that follow, plaintiffs' motion to remand is granted.

### I. BACKGROUND

Plaintiffs' state court complaint, filed in Stark County on December 1, 2014, Case No. 2014-CV-2744, asserts product liability and supplier liability claims against the defendants in connection with injuries sustained by Michael Sanders on January 26, 2013, when the Arctic Cat all-terrain vehicle ("ATV") he utilized in connection with his work allegedly malfunctioned because the throttle control lever/system froze, resulting in a condition known as "stuck throttle." (Doc. No. 1-2 ["Compl."] ¶¶ 3-4, 12.) At the time

of the events at issue, the plaintiffs resided in Jackson Township, Ohio. (Compl. ¶ 2.) Plaintiffs currently reside in Mississippi. (Compl. ¶ 5.)

Defendants Arctic Cat, Inc., Arctic Cat Sales, Inc., Arctic Cat Shared Services, LLC, Arctic Cat Production, LLC and Arctic Cat Production Support, LLC (collectively "Arctic Cat" or the "Arctic Cat defendants") are related Minnesota corporations, limited liability companies, or other business entities located in Thief River Falls, Minnesota. (Compl. ¶ 6.) For the purposes of diversity jurisdiction, the Arctic Cat defendants are citizens of Minnesota.[1] Plaintiffs assert strict liability and negligence claims against Arctic Cat pursuant to Ohio's product liability statutes, Ohio Rev. Code §§ 2307.71 *et seq*. (Compl. ¶¶ 10-20.)

Defendants Progressive Mahindra, LLC (dba Progressive Arctic Cat dba Arctic Cat of Massillon), Economy Auto Outlet, LLC (successor-in-interest to Progressive Mahindra LLC dba Arctic Cat of Massillon), Pro Car Auto Group, Inc. (dba Progressive Arctic Cat dba Arctic Cat of Massillon), and D.T.B. Land Development Limited Liability Company (dba Progressive Arctic Cat dba Arctic Cat of Massillon dba Progressive Motor Sports dba Progressive Superstore) are related or affiliated Ohio corporations, limited liability companies or other business entities, and are successor corporations or companies in the business of selling, supplying, repairing, or maintaining Arctic Cat products, including Arctic Cat all-terrain vehicles, in Massillon, Ohio (collectively, "Arctic Cat of Massillon" or the "Ohio defendants"). (Compl. ¶ 8.) The Ohio defendants

---

[1] Limited liability companies assume the citizenship of their member. *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (citations omitted). The sole member of the Arctic Cat limited liability companies is Arctic Cat, Inc. Thus, all of the Arctic Cat defendants are citizens of Minnesota for purposes of determining diversity jurisdiction. (Notice ¶¶ 19-20.)

2

are citizens of Ohio, and provided maintenance and service for the ATV. Plaintiffs assert supplier liability claims against the Ohio defendants pursuant to Ohio Rev. Code § 2307.78, alleging that Arctic Cat of Massillon was negligent in the servicing, testing, inspecting, and maintaining of the ATV. (Compl. ¶¶ 21-26.)

Defendants removed this case from the Stark County Court of Common Pleas on November 5, 2015, on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446(b)(3). (Doc. No. 1 ["Notice"].)[2] In the notice, defendants allege that this case was not removable at the time the action was filed in the Stark County Court of Common Pleas because, while there was complete diversity of citizenship between plaintiffs and defendants, the Ohio defendants are citizens of the state (Ohio) in which the action was brought. (Notice ¶ 10 (citing 28 U.S.C. § 1441(b)(2)).)[3] Defendants maintain that the case became removable pursuant to 28 U.S.C. § 1446(b)(3) when plaintiffs' expert reports[4] "made it clear" that plaintiffs had abandoned their claims against the Ohio defendants, and the case was removed within 30 days of receipt of those reports.

---

[2] Plaintiffs' case number 2014-CV-2744 was consolidated in the Stark County Court of Common Pleas with 2014-CV-2674, but defendants removed only case number 2014-CV-2744. (Notice ¶¶ 8-9.)

[3] Defendants allege that the jurisdictional amount for diversity jurisdiction is satisfied (Notice ¶¶ 13-17), and plaintiffs do not dispute this allegation.

[4] The state court's pre-trial order set dates (which were later modified) for the parties to identify their experts "with summary report of testimony to be completed by attorney[.]" (Doc. No. 9-1 at 644-45.) Plaintiffs provided the "Preliminary Report Summary" of their expert, Michael Burleson, on October 14, 2015. (Doc. No. 1-6 at 423 and 430-434.) Plaintiffs provided the "preliminary report" of their expert, Randy Nelson, on October 15, 2015, which contained Nelson's "preliminary findings and may be revised and updated at a later date, depending on the development of new evidence as part of the discovery process." (Doc. No. 1-6 at 424 and 458-66.) The Court's reference throughout this opinion to the reports at issue in this case refers to the above-referenced reports, without regard to whether the Court refers to the reports as "preliminary" or "summary." (All references to page numbers are to the page identification numbers generated by the Court's electronic docketing system.)

Abandoned defendants are not real parties in interest, thus their citizenship can be disregarded when determining federal diversity jurisdiction. (Notice ¶¶ 11-12.)

## II. DISCUSSION

### A. Standard on Motion to Remand

A defendant may remove to federal court only state court actions that originally could have been filed in federal court. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987); 28 U.S.C. § 1441(a). As a court of limited jurisdiction, a federal district court must proceed cautiously in determining that it has subject matter jurisdiction. *Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1252 (6th Cir. 1996). The court must give "due regard" to the power reserved to the states under the Constitution for the determination of controversies in the state courts. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941). Accordingly, removal statutes must be construed strictly to promote comity and preserve jurisdictional boundaries between state and federal courts. *Alexander v. Elec. Data Sys. Corp.,* 13 F.3d 940, 949 (6th Cir. 1994). "All doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Co.,* 183 F.3d 488, 493 (6th Cir. 1999). The removing defendant bears the burden of proving the court's jurisdiction. *See Rogers v. Wal–Mart Stores, Inc.,* 230 F.3d 868, 871 (6th Cir. 2000).

### B. 28 U.S.C. § 1446

The timing and procedure for removal of civil actions is governed by 28 U.S.C. § 1446. Section 1446(b)(1) provides that notice of removal of a civil action must be filed within 30 days of the receipt of the initial pleading or summons by the defendant.

4

Plaintiffs point out that portions of the notice imply that the Ohio defendants were fraudulently joined and that removal on that basis is untimely under § 1446(b)(1). (Mot. at 995-998.) But defendants make clear in their opposition to the motion that removal is based on § 1446(b)(3) and abandonment of plaintiffs' claims against the Ohio defendants, not fraudulent joinder. (Opp'n at 1087.)

If the initial pleading is not removable when filed, then the time for removal is governed by § 1446(b)(3). In such cases,

> a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).

According to defendants, plaintiffs' expert reports, served on October 14 and 15, 2015, demonstrate that plaintiffs abandoned their claims against the Ohio defendants, thus rendering the case removable. Defendants removed this action pursuant to § 1446(b)(3) within 30 days of receiving plaintiffs' expert reports. In response, plaintiffs contend that they have not abandoned their claims against the Ohio defendants and that the action must be remanded to state court pursuant to 28 U.S.C. § 1447(c) because the Court lacks diversity jurisdiction.

**C. Abandonment**

Removability under § 1446(b)(3) is conditioned upon the "voluntary actions" of plaintiff. *Davis v. McCourt*, 226 F.3d 506, 510 n.3 (6th Cir. 2000) (quoting *Hollenbeck v. Burroughs Corp.,* 664 F. Supp. 280, 281 (E.D. Mich. 1987)). The requirement that plaintiff must take some voluntary action to create diversity jurisdiction where it

5

previously did not exist is known as the voluntary-involuntary rule, which "is meant to safeguard the integrity of federal jurisdiction." *Jackson v. E-Z-Go Div. of Textron, Inc.*, Civil Action No. 3:12-CV-154-H, 2012 WL 2562830, at *3 (W.D. Ky. June 29, 2012) (citing *Wiacek v. Equitable Life Assurance Soc'y*, 795 F. Supp. 223, 225 (E.D. Mich. 1992)).

A voluntary act to abandon a claim must be an affirmative act, not a failure to act. *Brown v. Caterpillar, Inc.*, Civ. No. 15-02687 (WHW) (CLW), 2015 WL 4598778, at *3 (D.N.J. July 28, 2015) ("Mere failure to oppose a dispositive motion does not demonstrate affirmative consent to dismissal or a desire not to pursue the case against the non-diverse party.") (internal quotation marks and citations omitted) (collecting cases); *Reid v. Costco Wholesale*, Civil Action No. 15-3558 (CCC), 2015 WL 7731476, at *3 (D.N.J. Nov. 3, 2015) (claim not abandoned when plaintiff failed to pursue claims or to reinstate defendant after receiving a formal dismissal notice from the state court because "[p]laintiff may still act to vacate the state court's order by motion, which, if granted, would defeat diversity") (adopted by *Reid v. Costco Wholesale*, Civil Action No. 15-3558 (CCC-JBC), 2015 WL 7722404 (D.N.J. Nov. 30, 2015)). However, formal dismissal of a defendant by plaintiff is not required in order for a court to find abandonment. *See e.g., Hiser v. Seay*, Civil Action No. 5:14-CV-170, 2014 WL 6885433, at *2 (W.D. Ky. Dec. 5, 2014).

In order for an affirmative voluntary act to constitute abandonment, the abandonment must be "unequivocal." *DiNatale v. Subaru of Am.*, 624 F. Supp. 340, 344 (E.D. Mich. 1985) (by letter agreement to settle claim, plaintiff "unequivocally

abandoned" her claim); *Heniford v. Am. Motors Sales Corp.*, 471 F. Supp. 328, 333 (D.S.C. 1979) (plaintiff's lawyer "expressly announced that plaintiffs did not seek to impress liability upon [the non-diverse defendant]"); *cf. Delatte v. Zurich Ins. Co*., 683 F. Supp. 1062, 1063-64 (M.D. La. 1988) (plaintiff's attorney acknowledging that "plaintiffs had no real intent or hope of recovery of anything from [non-diverse defendant] since it was . . . a dissolved corporation" is not a "definite or unequivocal expression" of intent to abandon the action against the non-diverse party) (citing *Erdey v. Am. Honda Co., Inc.,* 96 F.R.D. 593, 599 (M.D. La. 1983) and *DiNatale*, 624 F. Supp. at 344); *Aynesworth v. Beech Aircraft Corp*., 604 F. Supp. 630, 636-37 (W.D. Tex. 1985) (plaintiffs' closing argument urging jury to find non-resident solely liable did not abandon claim against resident defendant because plaintiffs did not state that they absolutely did not want the jury to return a verdict against the resident defendant).

**D. Analysis**

Defendants' abandonment argument has two interrelated prongs—plaintiffs' expert summaries and failure to conduct discovery with respect to the Ohio defendants. More specifically, defendants contend that because plaintiffs focused their discovery efforts on Arctic Cat, sought no documents or written discovery from the Ohio defendants, directed their inquiry at the deposition of the Ohio defendants' service advisor to Arctic Cat's liability, and submitted expert reports which failed to address any liability as to the Ohio defendants, plaintiffs have abandoned their claims against the Ohio defendants.

Starting with the expert report summaries (which were due in October 2015), defendants posit that plaintiffs are required to prove their Ohio product liability cases involving scientific or technical matters by expert testimony. (Opp'n at 1081 (case citations omitted).) Based upon the silence of the expert reports as to the Ohio defendants, and plaintiffs' alleged failure to provide the Ohio defendants' ATV service records to plaintiffs' expert, defendants argue that there could be "[n]o clearer indication" that plaintiffs abandoned their claim against the Ohio defendants. (*Id.*)

As an initial matter, the standard for abandonment is an "unequivocal" affirmative act, not a "clear indication." Even assuming for the purpose of this analysis that defendants are correct that an expert is required for plaintiff's to prove their case against the Ohio defendants, because discovery was still ongoing, it is premature to conclude that the plaintiffs have abandoned their claims.

At least as early as September 11, 2015—before expert report summaries were due in October 2015, and well before the close of discovery on January 5, 2016— plaintiffs' counsel contacted defendants' counsel for the purpose of scheduling depositions regarding the Ohio defendants' liability. (*See* Doc. No. 22-2.) A deposition of an Ohio defendant representative, Robert Geis, a "service advisor" for the Ohio defendants, did not take place until November 3, 2015—weeks after the expert reports were due and two days before Arctic Cat removed the case to federal court. (Doc. No. 21-3 (Deposition of Robert Geis ["Geis. Dep."]) at 1200-02.)

During his deposition, Geis was questioned regarding the ATV's service records. (Geis Dep. at 1225-43; Doc. No. 22-1.) The service records indicate inspection of the

8

"throttle position sensor" ("TPS"). (Geis Dep. at 1230-34.) Geis was also questioned by plaintiffs' counsel regarding matters related to the throttle. (*See, e.g.*, Geis Dep. at 1232-34.) This line of questioning does not indicate an intention to abandon plaintiffs' claims. (Apparently, it is the Ohio defendants' service and maintenance of the ATV that forms the basis of plaintiffs' supplier liability claim with respect to the ATV's "stuck throttle.")

While it may be true that plaintiffs' discovery efforts before removal primarily focused on the Arctic Cat defendants, the fact remains that when the case was removed, fact discovery remained open for approximately 60 days. The Court is uncertain why the state court's case management schedule permitted fact discovery to continue after the initial expert reports were due (which perhaps created an opportunity for the confusion and uncertainty in the case that understandably led defendants to remove the case given the time constraints for removal), but given that discovery was ongoing at the time of removal, it is premature for the Court to consider whether the plaintiffs' have abandoned their claims against the Ohio defendants.

It is true, as defendants argue, that a plaintiff's "collective litigation actions" can "clearly demonstrate a lack of good faith intention to pursue a claim to judgment against a non-diverse defendant." But given the state of discovery at the time of removal, the Court is unable to determine that such is the case here.

By way of example, in *Faulk v. Husqvarna Consumer Outdoor Products N.A., Inc*, 849 F. Supp. 2d 1327, plaintiff never attempted to serve the non-diverse defendant, conceded that no viable cause of action existed against the non-diverse defendant, and affirmatively indicated that the claim against the non-diverse defendant would not be

9

pursued even in the event of remand. *Id*. In addition to finding that the failure of service constituted abandonment, the district court in *Faulk* also concluded that remand was unwarranted because plaintiff failed to pursue in good faith his claims against the non-diverse defendant.

In this case, defendants do not claim abandonment due to failure of service, and plaintiffs have not affirmatively conceded that there is no cause of action against the Ohio defendants. Plaintiffs attempted to schedule depositions of the Ohio defendants before the expert reports were due, and when the deposition was ultimately conducted, the witness was questioned regarding service to the ATV's TPS, and what the technician may or may not have observed regarding the throttle cable during that service. Defendants essentially challenge the sufficiency of this discovery to prove plaintiffs' claim as to the Ohio defendants, but that is not the issue with respect to whether plaintiffs' abandoned their claim and, because discovery was still open, plaintiffs were free to pursue additional discovery regarding the Ohio defendants' liability.

*Hernandez v. Cooper Tire & Rubber Co.*, No. 12–1399–JWL, 2013 WL 141648 (D. Kan. Jan 11, 2013), a case in which the issue of abandonment was considered, is instructive. The plaintiffs in *Hernandez* were passengers in a vehicle involved in a car accident. The driver of the vehicle was plaintiffs' sister (Mary Belle Hernandez), and she was named as a defendant in a state court action along with Cooper Tire & Rubber Co. ("Cooper"), and Heriberto Gomez ("Gomez"), whom plaintiffs alleged breached his duty of care when he mounted four tires on the vehicle that were not all the same size. Both the plaintiffs and the driver were Kansas citizens. *Id.* at *1. Cooper removed the case to

federal court after receiving plaintiffs' expert disclosures, on the grounds that plaintiffs "effectively abandoned their claims against [Mary Belle] Hernandez and Mr. Gomez or that plaintiffs improperly joined those defendants such that [Mary Belle] Hernandez's citizenship should be disregarded in determining diversity." *Id*. Cooper argued that it did not need the consent of Gomez to remove the case because plaintiffs abandoned their claims against him or improperly joined him in the first instance.

The district court found that Gomez was not fraudulently joined. Turning to the expert reports, the district court concluded that plaintiffs did not abandon their claim against Gomez as a consequence of their expert disclosures, which did not address Gomez's liability.

> [T]he expert reports relied upon by Cooper do not affirmatively rule out negligence on the part of Mr. Gomez. Neither expert touches on the issue of mounting "mismatched" tires on the vehicle. While Mr. Gilbert opines that [] there were no "pre-existing vehicle conditions that caused or contributed to this accident with the exception of the failed tire on the [vehicle]," that statement leaves open the question of whether mismatched tires may have contributed to the failed tire. Thus, while Cooper is correct that the expert disclosures do not contain any facts that indicate any negligence on the part of Mr. Gomez, those disclosures do not foreclose that possibility and they certainly do not reflect an intention to abandon the claims against Mr. Gomez.

*Id.* at *4.

The court in *Hernandez* pointed out that "discovery here has not yet closed and there remain significant gaps in that discovery—including the depositions of the plaintiffs and Mr. Gomez. Mr. Gomez could admit in his deposition that the tires he mounted on the vehicle did not match in size and he may shed light on whether 'mismatched' tires on a vehicle affect a tire's performance." *Id.* Thus, the district court could not conclude that

11

plaintiffs' expert disclosures definitely indicated an intention to discontinue the action against Gomez, and remanded the case. *Id.*

Defendants attempt to distinguish *Hernandez* from the instant action by arguing that the plaintiffs in *Hernandez* did not need expert testimony to prove their negligence action against Gomez, and Gomez's deposition was yet to be taken. (Opp'n at 1082-83.) Defendants' argument is unavailing. *Hernandez* is silent as to whether Kansas law requires an expert to opine regarding what role, if any, mismatched tires played in the accident.

Whether Kansas law required an expert opinion, the district court's extensive analysis of the language of those reports, and conclusion that their silence as to Gomez did not "foreclose" the liability of Gomez, and "certainly [did] not reflect an intention to abandon the claims against Mr. Gomez[,]" is instructive. *Id*. Like the expert reports in *Hernandez*, plaintiffs' expert reports are silent as to the liability of the Ohio defendants, but do not affirmatively absolve the Ohio defendants of liability or unequivocally reflect an intention to abandon the claims against those defendants.

As in *Hernandez,* discovery in this case remained open and depositions related to the liability of the Ohio defendants were yet to be taken at the time the expert reports were issued. A deposition related to the liability of the Ohio defendants was taken after the summary expert reports were issued. State court records reflect that the parties had sought and received extensions of various case management deadlines, including extensions of expert reports, discovery, motion practice, and trial dates. If this case had not been removed in the midst of fact discovery, plaintiffs could have sought—and may

12

have received—leave from the state court to file supplemental expert reports regarding the liability of the Ohio defendants.[5] Accordingly, the Court cannot conclude that plaintiffs abandoned their claim against the Ohio defendants based upon the silence of the expert reports as to the liability of those defendants.

### III. CONCLUSION

It is the defendants' burden to establish that the Court has subject matter jurisdiction. All doubts regarding the propriety of removal must be resolved in favor of remand.

For all of the foregoing reasons, the Court concludes that defendants have not satisfied their burden to show that plaintiffs abandoned their claims against the Ohio defendants. Plaintiffs' motion to remand is granted. (Doc. No. 12.) This case shall be remanded to the Stark County Court of Common Pleas.

Plaintiffs' request for sanctions for improper removal (Motion at 1008) is denied. The Court finds that, given the unique circumstances resulting from the case management schedule in place at the time, defendants had a colorable basis to remove this case based upon the content of the expert reports that were submitted by the October 2015 deadline but before the close of fact discovery.

**IT IS SO ORDERED**.

Dated: April 11, 2016

　　　　　　　　　　　　　　　　　　*[signature]*
　　　　　　　　　　　　　　　　　　**HONORABLE SARA LIOI**
　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

---

[5] Defendants urge the Court to strike and disregard the supplemental expert reports filed in this case after removal regarding the liability of the Ohio defendants. (Opp'n at 1084.) Because this case must be remanded, the Court declines to do so; the disposition of those reports will be for the state court to decide upon remand.